IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WALTER ALMOND,<br>    *Plaintiff*,<br><br>  v.<br><br>BROADLEAF, INC.<br>    *Defendant*. | Case No.: 1:23-cv-00164 (MSN/WEF) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss (ECF 5). Upon consideration of the pleadings and for the reasons set forth below, the Court will **GRANT** the motion and dismiss all claims.

I.    **BACKGROUND**[1]

Plaintiff Walter Almond is an older,[2] disabled, Black man, who was hired by Broadleaf as a Software Compliance Analyst at the Pentagon for the Command and Control Support Agency ("CCSA") on or about September 9, 2019, under a Cybersecurity Support Services ("CSSS") contract. Compl. ¶¶ 16, 20, 72. As a Software Compliance Analyst, Almond was responsible for providing oversight for a comprehensive Secure Software Development Life Cycle ("SSDLC") program. *Id.* ¶ 21. Almond also worked with the development and system administration teams to develop processes that tested and evaluated the compliance of various software applications within CCSA's purview. *Id.* ¶ 31.

---

[1] The Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor for purposes of this motion. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

[2] In his Complaint, Plaintiff does not disclose his actual age; however, he avers that he is "over the age of 40." Compl. ¶ 96.

At the time of his hiring, Almond suffered from various orthopedic and nerve disabilities stemming from his military service, including lumbar strain with degenerative arthritis and intervertebral disc syndrome; obstructive sleep apnea with asthma; right and left shoulder strain with rotator cuff tendonitis; right and left ankle sprain; right and left wrist sprain; and right and left knee strain with arthritis. *Id*. ¶ 23. Because of his medical conditions, Almond is prescribed eighteen medications and requires accommodations for his medical infirmities. *Id*. ¶ 24-25. For these reasons, Almond requested accommodations from Shawn Crivello – a parking space and a workable chair – when he was hired at Broadleaf. *Id*. ¶ 26-27.

In November 2019, Almond began experiencing significant mobility problems as a result of the amount of walking he was doing and the fact that his chair did not provide adequate lumbar support. He alleges these problems caused him "extreme pain and discomfort." *Id*. Almond informed Crivello about the swelling in his knees and orthopedic pain. *Id*. ¶ 28. He alleges that "Mr. Crivello suggested that [he] find a carpool that he could join to obtain a parking spot in the carpool area" and that Almond told him that "he did not feel comfortable lying about why he needed a parking space and that he would still require an accommodation for the workable chair." *Id*. Almond further alleges that Crivello told him that "he would look into it, but [he] did not receive a definitive answer regarding these items." *Id*. Almond began reaching out to Crivello on a weekly basis beginning in November 2019, but ultimately due to the COVID-19 pandemic, he and his team were placed on maximum telework around March 2020. *Id*. ¶ 29.

Over the course of his employment, Almond noticed that many software files had irregularities that revealed fundamental problems. *Id*. ¶ 32. Almond identified these issues and made recommendations to correct them, which instigated assessment meetings to discuss process refinement strategies. *Id*. During these meetings, the development team personnel became

increasingly "contentious, hostile, and abusive" towards Almond. *Id.* ¶¶ 33, 39. Almond points to two individuals, Ellen Corrathers and Ron Schultz,[3] who he alleges harassed him due to his negative assessments of the software and subsequent recommendations. *Id.* ¶ 34. Almond alleges that during these meetings, he felt an "abusive, intimidating, and offensive tone" multiple times a week and that he was often pressured into changing his assessments so as to give the software a more positive spin, but when he refused to do so, he was told that "he was wasting their time" and that they "could get someone else to do it." *Id.* Furthermore, Almond claims that Corrathers and Schultz often made statements that they were going to "get rid" of him or that they had "had enough" of Almond's recommendations. *Id.* ¶ 35. Almond's recommendations for resolving issues "were not only ignored but resulted in even more harassment." *Id.* ¶ 40. Almond then informed his government supervisors, Duleep Sahi and Colten O'Malley, of the harassment, which they reported to their supervisors, but nothing came of it. *Id.* ¶ 36.

Almond further alleges that he was consistently targeted during his assessments even though he was not the only one reporting issues in cybersecurity. *Id.* ¶ 37. Almond points to Jason Gilson, an Incident Report Handler (who is white), who also identified when there was a spillage of classified information, and who was not subjected to the same treatment by government or military personnel. *Id.* ¶ 38. Almond again complained about the harassment to his supervisors, Crivello and Grinvalsky, who attended many of these meetings. *Id.* ¶ 41. Crivello "acknowledged that the treatment was improper," but the harassment worsened. *Id.*

On May 6, 2020, Almond was reprimanded and placed on a Performance Improvement Plan ("PIP"). *Id.* ¶ 47. The reprimand stemmed from Almond sending Col. Campfield, who served as the Commander, a document that Almond thought had been approved for his signature. *Id.* ¶¶

---

[3] In the Complaint, Almond does not specify whether Ellen Corrathers or Ron Schultz are Broadleaf employees, contractors, or government employees.

3

42-46. During this meeting, Almond stated that "if the harassment did not end, he would file a formal complaint of harassment as he was being singled out as a result of his race, age, and disability." *Id.* Four hours after the meeting, Crivello e-mailed Almond the performance plan and informed him that team members had expressed concern about some of his recent actions, including e-mailing the colonel directly; bringing up an unapproved topic at a meeting; and e-mailing a document to a particular mailing list. *Id.* ¶ 48. Almond requested a meeting with Human Resources ("HR") regarding the PIP, which took place on May 8, 2020. *Id.* ¶ 50. During the meeting, Almond explained what had transpired on the three occasions cited in his PIP and the HR Director admonished Crivello and rescinded Almond's PIP and reprimand. *Id.*

Despite the rescission of the PIP, Almond alleges he was constructively demoted. Crivello became Almond's supervisor, even though Almond previously reported to more senior-level management and Crivello lacked the knowledge and skills needed to manage his work. *Id.* ¶ 52. Almond alleges that the harassment increased as he was directed to perform "meaningless" tasks as "punishment" by Corrathers and Schultz . *Id.* Almond also claims that he was not given the appropriate permission to make changes on applications and tools that needed reconfiguration, which he needed to provide effective cybersecurity evaluations, unlike Aubrie Mason Hyde,[4] a white colleague. *Id.* ¶ 54.

Almond further alleges that after the PIP rescission, his supervisors changed his hours to coincide with personnel in different time zones; requested that he "be forced to go onsite for meetings;" required him to create training documents outside the scope of his duties; and required him to perform the development team's administrative duties. *Id.* ¶ 56. Almond further alleges that despite the "constant harassment," he received written commendations for his performance from

---

[4] The complaint does not specify Hyde's exact role or employer.

Sahi and Crivello praising his work and proficiency and also received a pay increase in January 2022. *Id*. ¶ 58.

During an assessment meeting in March 2022, Almond requested that Corrathers advise the new Commander, Col. Michael Smith, of the harassment taking place. *Id*. ¶ 60. Corrathers scheduled a follow-up meeting a few days later with Division Chief Lt. Col. Burchell Porter, who asked Almond what he wanted to convey to Col. Smith. Almond explained that it was unreasonable for him to be harassed during meetings and that no other cybersecurity employee was subjected to such treatment. *Id*. ¶ 61.

While working at Broadleaf, Almond experienced numerous stress-related symptoms, primarily an inability to sleep. *Id*. ¶ 62. Almond's primary care doctor suggested that he speak with a psychologist, who diagnosed him with anxiety and depression. *Id*. ¶ 62. Due to this diagnosis, Almond requested "reasonable accommodations" but did not receive a response.[5] *Id*. ¶ 63. On March 29, 2022, Almond asked for the "reasonable accommodation" and harassment issues to be escalated to CCSA and Broadleaf leadership. *Id*. ¶ 64. The next day, Broadleaf HR provided Almond with paperwork for reasonable accommodations, which consisted of an employee ADA medical certification to be completed by a doctor, a reasonable accommodation request form, and a physical demands worksheet. *Id*. ¶¶ 65-66. Before Almond was able to complete the reasonable accommodation process, however, he was terminated. *Id*.

On April 22, 2022, Almond was terminated. *Id*. ¶ 67. He was not given any reason for his termination except that his employment was "at-will." *Id*. Apart from the rescinded PIP, he was never counseled, written up or reprimanded during his employment at Broadleaf. *Id*. ¶ 70.

---

[5] Almond does not specify what additional accommodations were requested.

Almond filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 24, 2022, alleging discrimination based on his race, age (over 40), disability (mental and physical), reprisal, and that he was subjected to harassment and a hostile work environment. *Id*. ¶ 5. On November 9, 2022, Almond received notice from the EEOC that a Final Agency Decision ("FAD") had been issued dismissing his Complaint and informing him of his right to file a civil action within 90 calendar days of receipt of the FAD. *Id*. ¶ 6.

## II.     LEGAL STANDARDS

This Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Nevertheless, a plaintiff must make more than bald accusations or mere speculation; "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are insufficient under Rule 12(b)(6). *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted).

## III.    ANALYSIS

Almond's complaint contains five counts alleging discrimination by his employer on the basis of his age, disability, and race, as well as retaliation and a hostile work environment. Given

Almond's failure to state a claim under each of his counts pursuant to Title VII of the Civil Rights Act ("Title VII"); the American with Disabilities Act ("ADA"); and the Age Discrimination in Employment Act ("ADEA"), the Court dismisses all counts.

### A. Discrimination Claim on the basis of age and race

Almond alleges that his employer and its agents, through *respondeat superior*, discriminated against him on the basis of age and race when he was "humiliated, embarrassed, and made to endure a great amount of pain and suffering" during his tenure at Broadleaf. Compl. ¶¶ 87, 89. Almond further alleges that similarly situated non-Black employees who were younger than him were not subjected to any, the same, or similar adverse treatment as him. *Id*. ¶¶ 92, 123.

Where a plaintiff does not allege direct evidence[6] of discrimination, as is the case here, he must then "rely on the burden-shifting scheme established in *McDonnell Douglas*." *Motley v. Virginia*, 2017 WL 1135613, at *8 (E.D. Va. Mar. 24, 2017). Under this framework, a plaintiff alleging discrimination on the basis of race under Title VII must establish a *prima facie* case of "(1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019). The elements of a *prima facie* case of age discrimination under the ADEA are as follows: "the plaintiff is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020).

While Almond need not establish a *prima facie* case for his discrimination claims at the motion to dismiss stage, his "[f]actual allegations must be enough to raise a right to relief above

---

[6] "Direct evidence encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested employment decision." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (internal quotation marks omitted).

the speculative level." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 544). Accordingly, courts "may look to the requirements of a *prima facie* case as a guide in assessing the plausibility of plaintiff's claim for relief." *Craft v. Fairfax Cnty.*, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016).

Almond's complaint lacks any factual allegations suggesting that his supervisors' actions like changing his hours to coincide with personnel in different time zones, requesting that he attend onsite meetings, requiring him to create training documents, assist other contractors to rewrite source code, or asking him to perform administrative duties, had anything to do with his race or age. Compl. ¶ 56. Almond also does not allege that anyone "made any derogatory comments about" his age or race. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Moreover, none of the conduct at issue seems to have been related to his age or race. Almond does not allege that any of his supervisors at Broadleaf harbored any discriminatory animus towards him.

Almond's conclusory allegations such as Defendant treating him "in a way that adversely affected his status as an employee because of his age," or that Defendant's "conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of [Almond] because of his age," or that his "race was a motivating factor in Defendant's unlawful conduct toward [him]" are the type of "naked assertions devoid of further factual enhancement" that this Court has held is "not entitled to the presumption of truth" at the motion to dismiss stage. Compl. ¶¶ 83, 111, 116. *See also Guillen v. Esper*, 2020 WL 3965007, at *8 (E.D. Va. July 13, 2020) (quoting *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017)).

Almond's attempt to compare himself to two white co-workers also does not raise a plausible inference of animus. Compl. ¶¶ 37, 54. When a plaintiff relies on a comparator to allege discriminatory animus, he is required to plead facts showing that there is "similarity in all relevant

8

aspects such as conduct, performance, and qualifications." *Rayyan v. Virginia Dep't of Transportation*, 2017 WL 123442, at *3 (E.D. Va. Jan. 12, 2017), *aff'd*, 719 F. App'x 198 (4th Cir. 2018). A "complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarly fails to state a claim for discrimination." *Guillen*, 2020 WL 3965007, at *11 (quoting *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016)). Almond "has provided virtually no details about the specific job titles, responsibilities, or qualifications of the individuals []he identifies as h[is] comparators." *Id*. For instance, Almond asserts that "[g]overnment and military personnel did not subject Mr. Gilson to the same treatment as [him]." Compl. ¶ 38. But Almond further alleges that Gilson was an Incident Response Handler (a different position than Almond's), without alleging Gilson's job responsibilities or qualifications. *Id*. Almond also alleges that Hyde received permission to do her work (unlike Almond), but he does not allege Hyde's specific job title, responsibilities, or qualifications. *Id*. ¶ 54.

Notably, at various points in his complaint, Almond acknowledges that he "was the only person implementing the SSDLC process . . ." and that he "was the only person working in the development environment to ensure that the agency's software application portfolio and other deliverables were compliant with overarching guidance . . ." *Id*. ¶¶ 30, 54. These assertions support a finding that he was likely the only person performing his job duties, undermining any argument that there are appropriate comparators.

Almond's complaint is devoid of facts from which the Court can infer his treatment was plausibly the result of discrimination on the basis of his age or race. Accordingly, the Court dismisses **Count I** and **Count III**.

### B. Hostile Work Environment[7]

---

[7] The Complaint only alleges a count for a hostile work environment based on Almond's age and race, not his disabilities. Compl. ¶¶ 94-103.

To state a hostile work environment claim based on age or race, a plaintiff must allege that "(1) the harassment was unwelcome; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). The claimant must also allege that his protected characteristic was the "but for" cause of the alleged conduct. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Circ. 2022). Here, Almond's allegations fall short of stating a plausible claim for two reasons.

First, the conduct Almond challenges was not severe or pervasive. "To meet Title VII's severe and pervasive prong, the Plaintiff's workplace must be 'permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Roberts v. Fairfax Cnty. Pub. Sch.*, 858 F. Supp. 2d 605, 609 (E.D. Va. 2012) (citation omitted). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Rizkalla v. Eng'g, Mgmt. & Integration, Inc.*, 2006 WL 4459434, at *13 (E.D. Va. Aug. 29, 2006), *aff'd*, 222 F. App'x 262 (4th Cir. 2007). Accordingly, "[p]roving that conduct rises to the level of objectively severe and pervasive is a tall order." *Hill v. Panetta*, 2012 WL 12871178, at *8 (E.D. Va. Oct. 4, 2012), *aff'd sub nom. Hill v. Hagel*, 561 F. App'x 264 (4th Cir. 2014).

Almond's Complaint raises no more than a "laundry-list of [his] workplace grievances." *Green v. Sessions*, 2018 WL 2025299, at *11 (E.D. Va. May 1, 2018), *aff'd sub nom, Green v. Whitaker*, 744 F. App'x 802 (4th Cir. 2018). Specifically, he complains that his supervisors started "to harass [him] as to his negative assessments," became "confrontational and unwilling to accept

any of [his] recommendations," and that he felt "pressured to change his assessments." Compl. ¶ 34. These actions do not rise to the level of conduct that constitutes severe or pervasive harassment.

Second, Almond has not plausibly plead that any of the conduct he alleges ensued because of either his age or race. Almond alleges that he was "humiliated, embarrassed, and made to endure a great amount of pain and suffering," but aside from the comments he provides as examples such as his supervisors telling him that they wanted to "get rid" of him during work meetings, Almond does not offer any further details. Compl. ¶¶ 35, 89. The Court "cannot jump from the mere existence of criticism to the conclusion that the criticism was . . . motivated [by membership in a protected class]." *Webster v. Johnson*, 126 F. App'x 583, 588 (4th Cir. 2005). Although Almond believes he was treated unfairly vis-à-vis other employees who "received support when they identified issues or weaknesses," he has not plead that Defendant's alleged actions were accompanied either by offensive or derogatory statements connected with a protected characteristic or activity. *Id*. ¶ 39.

Almond's hostile work environment claims under the ADEA and/or Title VII are insufficient to state a claim under Rule 12(b)(6). Accordingly, the Court dismisses **Count II**.

### C. Retaliation[8]

Almond alleges that he "faced retaliation for his prior EEOC activities, as Defendant continuously harassed him when he would seek reprieve from the disparate treatment" and that his supervisors knew of Almond's engagement in protected activity prior to engaging in the adverse actions. Compl. ¶¶ 127-129. To sufficiently allege a claim for retaliation, a claimant must allege that he (1) engaged in protected activity; (2) the employer took "an adverse action" against him; and (3) there existed a "casual connection between the first two elements." *Shomo v. Napa Mgmt.*

---

[8] Almond's retaliation claim is brought only pursuant to Title VII. Compl. ¶¶ 125-143.

11

*Servs. Corp.*, 2022 WL 17477066, at *4 (E.D. Va. Dec. 6, 2022) (citation omitted). In the context of a retaliation claim, a plaintiff must allege "enough facts to show that a reasonable employee would have found the challenged action[s] materially adverse." *Id.* (citation omitted). The standard is the same for claims under both Title VII and the ADEA. *See, e.g.*, *Walton v. Harker*, 33 F.4th 165, 177 (4th Cir. 2020) (analyzing ADEA and Title VII claims using the same elements); *Ryan v. McAleenan*, 2020 WL 1663172 at *20 (D. Md. Apr. 3, 2020) (same).

Almond has failed to state a plausible claim of retaliation because he did not sufficiently allege protected activity. Almond claims to have "complained about the harassment" to his government supervisors on an unspecified date. Compl. ¶ 41. He also alleges that he reported "the harassment" at a meeting with HR in May 2020. *Id.* ¶ 47. Finally, Almond alleges to have reported "harassment issues" to leadership at the end of March 2022. *Id.* ¶¶ 64-65. But aside from the comments made by Corrathers and Schultz that Almond was wasting their time, that they could get someone else to do his job, that they were going to get rid of him, or that they had had enough of his work-related recommendations, nothing points to conduct related to age or race. Almond's harassment complaints were therefore not protected activities under Title VII. *See Conyers v. Virginia Hous. Dev. Auth.*, 927 F. Supp. 2d 285, 295 (E.D. Va. 2013), *aff'd*, 533 F. App'x 342 (4th Cir. 2013) ("[T]he employee must complain about activity that constitutes unlawful discrimination under Title VII, rather than about unfair treatment generally."); *see also Monk v. Potter*, 723 F. Supp. 2d 860, 880 (E.D. Va. 2010) ("Title VII does not prohibit retaliation against employees who do not allege unlawful discrimination").

Accordingly, the Court dismisses **Count IV**.[9]

---

[9] Although the allegations in Count IV do not identify a particular adverse employment action, taken against Almond, the Court notes that the only materially adverse employment action Almond alleges elsewhere in his complaint was his termination, and therefore, that could be the only basis for his retaliation claim.

### D. Disability Discrimination in violation of the Americans with Disabilities Act

Almond alleges that Broadleaf violated the Americans with Disabilities Act ("ADA") by failing to provide him with reasonable accommodations, namely his "request for a parking spot and a workable chair." Compl. ¶ 146. To establish a *prima facie* case against an employer for failure to accommodate him under the ADA, he must show "that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (cleaned up).

Almond alleges that he made this request when he was initially hired in September 2019, and later between November 2019 and March 2020. Compl. ¶¶ 26-29. But Almond does not allege facts that indicate that these accommodations – a parking spot and a workable chair, would have allowed him to perform the essential functions of his job. He fails to provide any details about the essential functions of a Software Compliance Analyst and how his various disabilities were impeding him from performing those functions.

Elsewhere in the complaint, Almond alleges that due to work stress-related symptoms, he was diagnosed with anxiety and depression and that he "continued to request reasonable accommodations." *Id.* ¶ 63. But Almond does not specify what type of accommodations he requested regarding his anxiety and/or depression, or how reasonable accommodations may have helped him perform his job functions. Nor did Broadleaf even refuse to accommodate Almond, as he was terminated before Almond returned the accommodations paperwork. *Id.* ¶¶ 65-67. These allegations therefore do not state a claim either.

Accordingly, the Court dismisses **Count V**.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the complaint is **DISMISSED**.

The Clerk is directed to close this civil action.

It is **SO ORDERED**.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
March 20, 2024